UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 NOV 19 PM 12:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

TARA RATLIFF and CARA )
STANDRIDGE, )
 )
   Plaintiffs, )
 )
vs. )  Civil Action No. CV-01-S-2338-NE
 )
MORGAN COUNTY BOARD )
OF EDUCATION, )
 )
   Defendant. )

ENTERED
NOV 19 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

    Plaintiffs, Tara Ratliff and Cara Standridge, are female employees of the Morgan County Board of Education. They filed a complaint alleging that their employer paid each less than a male counterpart performing work requiring equal skill, effort, and responsibility, in violation of The Equal Pay Act of 1963, 29 U.S.C. § 206(d), as well as the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. The action presently is before the court on defendant's motion for summary judgment.

    At the summary judgment stage, Cara Standridge "decided not to pursue her claims after having reviewed the discovery . . . [and] consent[ed] to summary judgment on her claims."[1] This court obliges, and summary judgment will be entered in favor of defendant on all of Standridge's claims.

    Additionally, Tara Ratliff abandoned her equal protection and § 1983 claims when she failed to respond to defendant's motion for summary judgment and brief on those issues. Contentions that are not addressed in a party's responsive brief are deemed abandoned. *See, e.g., Chapman v. AI*

---

[1] Plaintiff's brief opposing summary judgment, at 1.

16

*Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (some citations omitted).[2]  Accordingly, summary judgment also is due to be entered in favor of defendant on Ratliff's equal protection and § 1983 claims.

As a consequence of the foregoing rulings, only plaintiff Tara Ratliff's Equal Pay Act claim remains for adjudication. Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers

---

[2] *Cf., e.g., Lucas v. W.W. Grainger, Inc.* 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted)); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that clearly are not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citing *Allstate Insurance Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994)); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to addressed issue for failure of party to argue it in its brief on appeal).

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, the court concludes that summary judgment is due to be entered in favor of defendant on all claims asserted in the plaintiffs' complaint.

## I. SUMMARY OF FACTS

Tara Ratliff was hired by defendant on July 24, 1994, to work as a secretary in defendant's Transportation Department.[3] Four years later, on August 31, 1998, defendant created a "payroll

---

[3] Complaint ¶ 7; defendant's evidentiary submissions, Tab B (Spillers affidavit), at 8.

clerk" position in the Finance Department and posted a vacancy announcement for the position.[4] Ratliff applied for a transfer to the new position on September 9, 1998.[5] Her request was approved, and the transfer was made effective on November 17, 1998.[6] The gravamen of Ratliff's claim is that a male employee in the Finance Department, David Woodard, is paid a salary of $44,000 a year, while she receives "approximately $23,000" annually, "although [Woodard] does the same work as [Ratliff] *and his job is classified as a clerk*, the same as [Ratliff]."[7]

Woodard was hired by defendant on July 18, 1991, to fill a position that defendant describes as "payroll accountant."[8] However, the minutes of defendant's July 18, 1991 Board meeting, which authorized Woodard's initial hire, reflect that he was to be employed as a "payroll clerk/bookkeeper."[9] This same title, or simply "payroll clerk," was used to refer to Woodard's job position in the minutes every year thereafter, when the Board annually approved re-employment of its support personnel.[10] Ratliff points to these references in the minutes, along with evidence that she submitted purporting to establish that she and Woodard perform substantially the same duties.[11]

Defendant disagrees, arguing that the references to Woodard's job title in the Board's minutes should not be strictly interpreted.[12] Defendant asserts that Woodard actually is employed in the job position of "payroll accountant" and, further, that his duties are not substantially similar

---

[4] Defendant's evidentiary submissions, Tab B (Spillers affidavit), at 8.
[5] *Id.*
[6] *Id.*
[7] Complaint ¶ 11 (emphasis supplied).
[8] Defendant's evidentiary submissions, Tab B (Spillers affidavit), at 4.
[9] Plaintiff's evidentiary submissions, Exhibit F (Board minutes), at July 18, 1991 entry.
[10] *See generally id.*
[11] Plaintiff's brief opposing summary judgment ¶¶ 26-29.
[12] Defendant's brief in support of summary judgment, at 23-24.

to Ratliff's duties as "payroll clerk."[13] In support of its contentions, defendant points to the following evidence: Woodard's employment contracts, each of which specifies that he was employed as a "payroll accountant";[14] various affidavit and deposition excerpts; and other evidence indicating that Ratliff and Woodard do not perform essentially the same job duties.[15]

## II. DISCUSSION

In order to avoid summary judgment on her Equal Pay Act claim, Ratliff bears the initial burden of demonstrating that her employer pays a different wage to a male employee "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974); *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998) (citing *Waters v. Turner, Wood & Smith Insurance Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989)).

> The plaintiff need not prove that the job held by her male comparator is identical to hers; she must demonstrate only that the skill, effort, and responsibility required in the performance of the job are "substantially equal." 29 U.S.C. § 206(d)(1); *Corning Glass Works*, 417 U.S. at 204, 94 S. Ct. at 2232-33; *Brock v. Southwestern College*, 765 F.2d 1026, 1032 (11th Cir. 1985). Although job titles are entitled to some weight in this evaluation, "the controlling factor under the Equal Pay Act is job content" — the actual duties that the respective employees are called upon to perform. *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973).

*Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992); *see also Alford v. Cosmyl, Inc.*, 209 F. Supp. 2d 1361, 1371 (M.D. Ga. 2002) (holding that "[t]he issue at the summary judgment stage is whether a reasonable jury could conclude that [plaintiff's] job was

---

[13] *Id.* at 24-25.

[14] Defendant's evidentiary submissions, Tabs 2 and 3 (Woodard employment contracts for 1994-95 and 1997-98). In both of these contracts, Woodard job title is specified as "payroll accountant."

[15] *See* defendant's brief in support of summary judgment, at 25-30.

substantially equal to the job of fellow male employees, and yet she was [paid] less") (citing *Waters*, 874 F.2d at 799). Thus, the core requirement for establishing a cognizable Equal Pay Act claim is that plaintiff meet "the fairly strict standard of proving that she performed substantially similar work for less pay" than a male counterpart. *Miranda*, 975 F.2d at 1526.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to prove by a preponderance of the evidence that the pay differential is justified by one of the four exceptions, or affirmative defenses, listed in the Equal Pay Act itself. *See Corning Glass Works*, 417 U.S. at 196, 94 S. Ct. at 2229; *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1018 (11th Cir. 1994). Those exceptions are: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any . . . factor other than sex." 29 U.S.C. § 206(d)(1). The employer's burden of proof for those affirmative defenses is a "heavy one," because it "must show that the factor of sex provided no basis for the wage differential." *Irby*, 44 F.3d at 954 (quoting *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (internal quotation marks omitted)). If the employer carries that burden, "the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based discrimination. . . . If plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." *Irby*, 44 F.3d at 954 (citations omitted).

Here, summary judgment is due to be granted because Ratliff cannot make out her prima facie case.[16] A reasonable jury could not conclude that Ratliff's job duties were "substantially

---

[16] It appears that that Ratliff could have additionally pursued her claim under the provisions of Title VII, but chose not to do so. "Gender-based discrimination in rates of pay to employees . . . is prohibited by both the Equal Pay Act . . . as well as by Title VII . . . ." *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1526 (11th Cir. 1992). The quantum of proof that a plaintiff must provide differs somewhat between the two forms of action:

similar" to Woodard's.

Ratliff attempts to demonstrate that her job duties and responsibilities are substantially equal to those of Woodard by setting forth a "job comparison table," which purports to list Woodard's job duties, and then indicates which of those duties plaintiff also performs.[17] Thirty-nine duties are listed, and Ratliff claims that she performs twenty-four of these in such a manner that her job is substantially equal to Woodard's. Ratliff does not specify any duties which she performs, but Woodard does not.[18] Conversely, Ratliff concedes that *she does not — but Woodard does —* perform the following duties:

- maintain and reconcile payroll related ledgers, etc.;

- prepare financial and payroll activity reports . . .;

- process remittances to appropriate agencies . . .;

- ensure appropriate tax deposits . . .;

- ensure correct retirement withholdings, etc.;

- prepare U.S. Department of Labor statistical reports;

- prepare reports relating to federal funds benefits;

- prepare Child Nutrition Program labor reports;

- calculate Alabama Department of Industrial Relations reports;

- calculate Alabama Department of Education Unemployment reports;

---

A plaintiff suing under the [Equal Pay Act] must meet the fairly strict standard of proving that she performed substantially similar work for less pay. The burden then falls to the employer to establish one of the four affirmative defense provided in the statute. Under the disparate treatment approach of Title VII, however, there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the burden of proving an intent to discriminate on the basis of sex . . . .

*Hammock*, 201 F. Supp. 2d at 1187 (quoting *Miranda*, 975 F.2d at 1526).

[17] Plaintiff's brief opposing summary judgment, at 7-8.

[18] *Id.*

- prepare IRS & SSA reports;

- prepare Alabama Department of Revenue reports;

- prepare reports and documents related to employment contracts;

- interface with the superintendent [and] Board . . . relating to payroll . . .;

- assist Finance Director in preparation of annual budgets.[19]

Ratliff claims that *both she and Woodard* perform the following duties:

- examine payroll documents to ensure accuracy;

- issue, receive, and examine payroll records;

- maintain files and records related to payroll system;

- prepare, calculate, and file payroll sheets (in general);

- prepare, calculate, and file leave reports;

- prepare substitute lists;

- prepare leave claim forms;

- reconcile payroll sheets for sick leave, personal leave, etc.;

- insure entry of reconciled data in appropriate records;

- prepare payroll and audit reports;

- generate payroll checks and ACH[20] direct deposit;

- process payroll checks and ACH deposit stubs;

- transmit appropriate documentation to bank for ACH deposits;

---

[19] *Id.*

[20] The record does not reveal what "ACH" stands for, but such information is not necessary to the adjudication of this action.

- assure PEHIIP[21] insurance billings;
- reconciliation of employee non-mandatory deductions;
- calculations for preparation of quarterly IRS tax reports;
- calculations for Deloitte Consulting Medicaid Reimbursable . . .;
- prepare W-2 wage and withholdings statements and related reports;
- prepare reports related to salary increases, step raises, salary schedules;
- prepare reports related to longevity payroll, personal leave, teacher's retirement; etc.
- prepare personal leave/sick leave conversions;
- conduct new teacher orientations regarding payroll deductions, withholdings, etc.;
- coordination with system computer office for various functions;
- correspond with various governmental agencies.[22]

Ratliff's deposition testimony directly contradicts her assertion that she performs several of the job duties listed above.[23] Her testimony reveals that she performed many of these tasks in small part only, or not at all. For example, plaintiff testified as follows with regard to her claim that she performs calculations in preparation for quarterly IRS tax reports:

Q: But the quarterly tax reporting and all of the accounting that's done with that, Mr. Woodard does that?

---

[21] Similarly, the record does not reveal what "PEHIIP" stands for, but such information is not necessary to the adjudication of this action.

[22] Plaintiff's brief opposing summary judgment, at 7-8; defendant's evidentiary submissions, Tab 4 (Woodard job duties summary).

[23] The factual basis for Ratliff's "job comparison table" is derived from an affidavit that she submitted almost eight months after giving her deposition. *See* plaintiff's evidentiary submissions, Exhibit E (Ratliff affidavit). To the extent that her affidavit, and the "job comparison table" distilled from it, contradict her earlier deposition testimony, the court credits what plaintiff said during deposition. In this circuit, "a party cannot give 'clear answers to unambiguous questions' in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (quoting *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). "When this occurs, the court may disregard the affidavit as a sham." *Rollins*, 833 F.2d at 1530 (citing *Van T. Junkins*, 736 F.2d at 658-59).

> A:   Yes, sir.[24]
>
> . . .
>
> Q:   He prepares whatever is necessary to go to the Internal Revenue Service in the way of reports from the Morgan County Board of Education, doesn't he?
>
> A:   Yes, sir.[25]

Plaintiff further testified, with regard to her responsibilities in connection with the preparation of W-2 wage and withholding statements "and related reports," in the following manner:

> A:   . . . And the W2s, I've had to tear those and get them ready for employees.
>
> Q:   Had to do what?
>
> A:   Had to tear them apart and get them ready —
>
> Q:   Tear them apart, right. Now, the tax deposit, maybe I misunderstood, but I thought I heard you fixed [sic] a couple of times.
>
> A:   I have a few times.
>
> Q:   A few times. Who fixes — I believe you've already testified that that's really what Mr. Woodard does?
>
> A:   Yes.[26]

The testimony relating to plaintiff's claim that she prepares reports connected with employee salary increases, step raises, and salary schedules is as follows:

> Q:   Did you have anything to do with calculating and the accounting that was necessary with the calculation of step-raise payments last year?
>
> A:   No. Mr. Woodard did that.
>
> Q:   That's an accounting function that he performed, right?

---

[24] Plaintiff's evidentiary submissions, Exhibit A (Ratliff deposition), at 20.
[25] *Id.* at 32.
[26] *Id.*

> A: Yes.
>
> Q: And not a payroll clerk function?
>
> A: Right.[27]

Plaintiff's deposition testimony regarding her claim that she participated in "new teacher orientation" activities is as follows:

> Q: What did you do insofar as orienting new teachers and new employees when they come in by way of explaining to them the accounting practices for their payroll and deductions and all of that? Who does that?
>
> A: Mr. Woodard does the orientation.[28]

Remarkably, Ratliff testified that she and Woodard perform different jobs in the Finance Department:

> Q: I know you didn't prepare all of this, but it was prepared by your attorney. In your complaint you say that David Woodard in the bookkeeping department, paragraph eleven, who does substantially the same or similar work as you do — now, you've told us today that he does accounting work and you do payroll clerk work; right?
>
> A: Right.[29]
>
> . . .
>
> Q: As of right now, you do the work of a payroll clerk[,] right?
>
> A: Yes.
>
> Q: As of right now, Mr. Woodard does the work of a payroll accountant?
>
> A: Right.[30]
>
> . . .

---

[27] *Id.* at 62.

[28] *Id.*

[29] Plaintiff's evidentiary submissions, Exhibit A (Ratliff deposition), at 45-47.

[30] *Id.* at 48.

> Q: [Y]ou've testified that [Woodard] does the accounting work?
>
> A: Right.
>
> Q: And you do the clerk work?
>
> A: But he also does some of the clerk work also.
>
> Q: Right. He does that, too, doesn't he?
>
> A: Yes.
>
> Q: But you don't do the accounting work and he does that?
>
> A: Right.[31]
>
> . . .
>
> Q: Have you ever done any overtime?
>
> A: No, sir.
>
> . . .
>
> Q: Do you know whether or not Mr. Woodard works on Saturdays and sometimes Sundays?
>
> A: I know that he stays over after work.[32]

After reviewing Ratliff's "job comparison table" in juxtaposition with her deposition testimony,[33] it is obvious that Woodard performs a host of duties that Ratliff does not. Further, many of the duties that Ratliff purports to share with Woodard clearly are not performed on the same scale: *e.g.*, Ratliff's tearing apart perforated W-2 tax forms, and correcting ("fixing," to use her term) mistakes thereon "a few times," is not even remotely similar to Woodard's preparation of the data that is typed on those forms. Based on this record, no reasonable juror could find that Ratliff

---

[31] Plaintiff's evidentiary submissions, Exhibit A (Ratliff deposition), at 59-60.

[32] *Id.* at 60.

[33] *See supra* note 23.

and Woodard perform substantially similar duties. Accordingly, Ratliff's claim is due to be dismissed.

Ratliff makes much of the fact that Woodard's job title was referred to as "payroll clerk" in the Board minutes. The court is not dissuaded from its conclusion that Woodard and Ratliff have substantially different job duties merely because Woodard's job title was referred to in the same terms as Ratliff's job title in such a context.

> The authorities generally recognize the fact that proceedings of school boards are usually kept by those not versed in the law and are more or less informal in character, and should not be given a narrow and technical construction. Too strict rules should not be adopted with reference to the records and proceedings of such boards, but they should be construed in such manner as to give effect to the manifest intention of the members.

*York v. Board of School Commissioners of Mobile County*, 460 So. 2d 857, 860 (Ala. 1984). This passage is particularly relevant here, where it is obvious from plaintiff's deposition testimony below, as well as the explicit terms of Woodard's written employment contracts, that he was commonly considered to be a "payroll accountant" — *not* a "payroll clerk."[34]

Even if Woodard and Ratliff were found to have identical job *titles*, the dispositive issue in this action is "job content," *Miranda*, 975 F.2d at 1533 (internal quotation marks and citation omitted) — that is, whether the duties and responsibilities of the two positions are substantially the same — *not* whether they share a common *label*. *See, e.g., Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998) (holding that "although formal job titles or descriptions may be considered, the controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content") (citing *Miranda*, 975 F.2d at 1533); *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 592 (11th Cir. 1994) (explaining that "[j]ob titles are a factor for consideration, but are not

---

[34] Defendant's evidentiary submissions, Tabs 2 and 3 (Woodard employment contracts for 1994-95 and 1997-98). In both of these contracts, Woodard job title is specified as "payroll accountant."

dispositive") (citation omitted); 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 502 (3d ed. 1996) ("[C]iting similar job titles or descriptions does not, without more, prove substantial equality."). Ratliff's deposition testimony vividly illustrates that she founded this lawsuit upon semantics, rather than common sense or legal merit:

> Q: Well, did you know that there's always been a position in the finance department known as payroll accountant?
>
> A: Yes.
>
> Q: Who held that position?
>
> A: Mr. Woodard.
>
> Q: You knew that?
>
> A: Yes.
>
> Q: You knew that when you filed this lawsuit?
>
> A: *I knew that he was classified as payroll accountant.*
>
> Q: And you knew he did all the accounting work, whatever that was, that was required to be done in the finance department where you were?
>
> A: Yes.
>
> Q: Those duties were different from what you do aren't they?
>
> A: *But if we're classified as clerks, I felt like we ought to be paid on the same salary schedule.*

> Q:   *But he was classified as a payroll accountant.*
>
> A:   *But not through the official board minutes.*
>
> Q:   But you knew he was classified as a payroll accountant, didn't you?
>
> A:   Yes.
>
> Q:   And you knew there was a payroll accountant salary position in the board's salary schedule?
>
> A:   Yes.
>
> Q:   And has been since 1991?
>
> A:   Right.
>
> . . .
>
> Q:   So why can't [Woodard's] salary be more than yours as a payroll clerk?
>
> A:   *If he was* [an] *accountant through the board minutes, then I wouldn't have a problem with that, but through board minutes, we're all classified as clerks.*[35]

While the Board's reference to Woodard's job title as "payroll clerk" can be fairly labeled a misnomer, that mischaracterization does nothing to prove that Ratliff and Woodard's jobs were substantially similar. Plaintiff's claims are meritless. Defendant's motion for summary judgment is due to be granted.

An order consistent with this memorandum opinion shall be issued contemporaneously

---

[35] Plaintiff's evidentiary submissions, Exhibit A (Ratliff deposition), at 45-46 and 50-51 (emphasis supplied).

herewith.

DONE this __19th__ day of November, 2002.

_____
United States District Judge